# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

**TONY McCOY**  **PLAINTIFF**
**ADC #550483**

v.  No: 4:22-cv-00222-BSM-PSH

**TISCHA JOHNSON,** *et al.*  **DEFENDANTS**

## PROPOSED FINDINGS AND RECOMMENDATION

### INSTRUCTIONS

The following Recommendation has been sent to United States District Judge Brian S. Miller. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

### DISPOSITION

### I. Introduction

Plaintiff Tony McCoy filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 on March 10, 2022, while incarcerated at the Arkansas Division of Correction's East Arkansas Regional Unit (Doc. No. 1). McCoy alleges that he was subjected to cruel

and unusual punishment at the Dallas County Detention Center ("DCDC") by defendants Lieutenant Catherine Sholar, Lieutenant Key, Deputy Sheriff Walton, and Jail Administrator Tischa Johnson (the "Defendants").

Before the Court are the Defendants' motion for summary judgment, supporting brief, statement of undisputed material facts, and several exhibits (Doc. Nos. 32-35). Although McCoy was notified of his opportunity to file a response, he did not do so. *See* Doc. No. 36. He also failed to file a statement setting forth disputed facts he believes must be decided at trial as required by Local Rule 56.1. Because McCoy failed to controvert the facts set forth in the Defendants' statement of facts, Doc. No. 33, those facts are deemed admitted. *See* Local Rule 56.1(c). The Defendants' statement of facts, and the other pleadings and exhibits in the record, establish that the material facts are not in dispute, and Defendants are entitled to judgment as a matter of law.

## II. Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir.

2002). The nonmoving party may not rely on allegations or denials, but instead must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). An assertion that a fact cannot be disputed or is genuinely disputed must be supported by materials in the record such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . .". Fed. R. Civ. P. 56(c)(1)(A). A party may also show that a fact is disputed or undisputed by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III. Facts

The Defendants filed a statement of the material facts as to which they contend there is no genuine dispute, to which McCoy failed to respond (Doc. No. 33). They also submitted video recordings of the incident at issue in this lawsuit (Doc. Nos. 32-1 – 32-5, 35); McCoy's deposition testimony (the "*McCoy Deposition*") (Doc. No. 32-6); and a copy of the DCDC's policy on the use of force (Doc. No. 32-7) to support the facts set forth in their statement of undisputed material facts. Based on those submissions, the Court sets forth the following pertinent facts.

### *McCoy's Complaint Allegations*

On March 10, 2022, McCoy filed a Complaint alleging that Defendants violated his Constitutional rights by subjecting him to cruel and unusual punishment. Doc. No. 1 at 4-6. Specifically, he alleged that he was tased and sprayed with mace by Defendants Sholar, Key, and Walton. Doc. No. 1 at 4. He further alleged that Johnson kept him in a restraint chair wearing wet, mace-soaked clothing for 33 hours with no medical attention. *Id.* at 4-5. In his deposition, he testified that the incident in question occurred on January 16, 2022 (the "January 16 Incident").

### *The January 16 Incident*

The incident began at 20:35:48 (8:35 p.m.) when McCoy became agitated about a bag of personal items he claimed belong to him.[1] He yelled and screamed at officers, claiming that the bag of personal items was missing several items. Doc. No. 33 at 1; Doc. No. 32-1 ("*Video Footage 1*") at 20:35:38 – 20:40;[2] *McCoy Deposition* at 16: 10-25, 17: 1-25. Just over two hours later, at 22:47 (10:47 p.m.), McCoy was led out of the G-pod by several officers, including defendants Sholar (referred to as "Tuffy" by McCoy in his deposition),[3] Key, and Walton. Doc. No. 32-2 ("*Video Footage 2*") at 22:47:00 – 22:47:18. He argued with the officers for several minutes as they ordered him to go into the D-Pod, his assigned cell at the time; he refused to comply multiple times, yelling and arguing. *Id.* at 22:47:18 – 23:00:59; Doc. No. 33 at 1. As a result of McCoy's repeated refusal to comply with orders, Sholar pointed a taser gun at McCoy and ordered him to enter D-pod. *Id.* at 23:01:00. She gave him several warnings, which McCoy ignored, and then deployed the taser gun in an effort to obtain compliance. *Id.* at 23:01:30; Doc. No. 33 at 1-2.

---

[1] McCoy is seen arguing with an officer he identified as Brian during his deposition. *McCoy Deposition* at 16: 13-15. Although McCoy claims Brian shot him with a taser or mace gun during this altercation, he did not sue Brian. Doc. No. 1.

[2] The Court refers to the time stamp on each video located in the top right-hand corner.

[3] *See McCoy Deposition* at 11:3, 42:2. The court reporter also spelled Sholar's name as Scholar on several occasions.

McCoy fell and Walton attempted to handcuff him. *Id.* at 23:01:40-45. *See also McCoy Deposition* at 25: 6-11. McCoy became physical and angry, jumping up and twisting away from Walton, flailing his arms in an aggressive manner, and moving towards Sholar. *Video Footage 2* at 23:01:52; Doc. No. 33 at 2. Walton and Key deployed pepper spray which was not effective.[4] *Id.* at 23:01:53-58; Doc. No. 33 at 2. McCoy then picked up a rolling cart, lifting it over his head, and acting as if he planned to throw it at the officers before setting it down and continuing to yell. *Id.* at 23:02:00-22; *McCoy Deposition* at 26:12-15; Doc. No. 33 at 2. He then pushed another larger cart over and several officers exited the room. *Video Footage 2* at 23:02:54-23:06. McCoy then approached Key, backing him into the same doorway. *Id.* at 23:03:10-28. Another officer (identified as Sammy Caldwell by McCoy) then exited the room through another door on the opposite side; McCoy burst through that door, knocking that officer to the ground. *Id.* at 23:03:29-33; *McCoy Deposition* at 26:24-25 - 27:1-1-4; Doc. No. 33 at 2.

    McCoy advanced into the hallway, shoving the officer he identified as Brian to the ground and escaping through another door. Doc. No. 32-3 ("*Video Footage 3*") at 23:03:40-42; Doc. No. 33 at 2. McCoy then entered the front intake area. Doc. No. 32-4 ("*Video Footage 4*") at 23:03:42. Walton, Key, and Sholar entered

---

[4] It appears a third officer, identified as Sammy Caldwell by McCoy in his deposition, also shot a mace gun at McCoy. McCoy did not sue Caldwell.

the intake area, and McCoy finally allowed Walton to handcuff him. *Id.* at 23:04:15-35; Doc. No. 33 at 2. A few minutes later, McCoy was placed in a restraint chair. *Id.* at 23:09:20-23:10:40. Sholar offered him a wet towel to clean his face; he initially refused but later allowed her to wipe his nose. *Id.* at 23:15:17-23:16:09.

Approximately an hour later (at 12:14 a.m.), paramedics arrived. Doc. No. 32-5 ("*Video Footage 5*") at 00:14:44. The officers gave McCoy dishwashing detergent and cold water to clean off the mace. *Id.* at 00:19:11-00:23:30; Doc. No. 33 at 2. His stomach and chest were examined and his blood pressure was taken. *Id.* at 00:23:47-00:26:49. Defendant Johnson then wheeled McCoy away, while he argued with her about his cell placement. *Id.* at 00:28:47.

McCoy testified he was then placed in the D-pod. *McCoy Deposition* at 30:9-11. He stated he was there for 33 hours before being told he would get a shower and that Bradley County was coming to get him. *Id.* at 30:15:32:7, 46:9-17. McCoy was allowed to shower. *Id.* at 49:18. He testified he was moved the morning after the incident, on January 17, to the Arkansas Department of Correction (ADC). *Id.* at 47:6:25-48:1-4, 50:14-16. The record, however, indicates that he was moved on January 18. *See* Doc. No. 21-1.

McCoy claims he suffered burning skin, a swollen throat, and pain from the mace and was eventually seen by a nurse at ADC a few days after his transfer.

*McCoy Deposition* at 14:15-17; 44:11-17; 45:12-20; 46:4:14; 48:8-10. She told him the inflammation would go down and he did not need treatment. *Id.* at 51: 15-17.

### *DCDC Use of Force Policy*

Dallas County's official policy on the use of force states: "Detention officers will use the minimum amount of non-deadly force necessary to maintain the security and control of detainees and to prevent incidents from escalating into an emergency." Doc. No. 32-7 at 1; Doc. No. 33 at 2-3. Specifically with respect to pepper spray, Dallas County's policy states that "UNDER NO CIRCUMSTANCES WILL ANY OFFICER USE O.C. SPRAY (PEPPER SPRAY) OR TASER(S) WHILE A DETAINEE/ARRESTEE IS RESTRAINED . . . ." *Id.* at 3; Doc. No. 33 at 3.

### IV. Analysis

#### A. *Individual Capacity Claims/Qualified Immunity*

The defendants argue they are entitled to qualified immunity[5] with respect to McCoy's individual capacity claims because McCoy's constitutional rights were not

---

[5] Qualified immunity protects government officials from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person [in their positions] would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity is a question of law and is appropriately resolved on summary judgment. *McClendon v. Story County Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). To determine whether a defendant is entitled to qualified immunity, the Court must consider two questions: (1) do the facts alleged by plaintiff establish a violation of a constitutional or statutory right; and (2) if so, was that right clearly established at the time of the defendant's alleged misconduct. *Wright v. United States*, 813 F.3d 689, 695 (8th

violated on the date in question. The undersigned agrees, for the reasons explained below.

    1.    <u>Excessive Force Claims: Defendants Sholar, Walton, and Key</u>

McCoy claims that Sholar, Walton, and Key used excessive force against him when they deployed a taser gun and/or mace on January 16, 2022. Because McCoy was a pre-trial detainee during his incarceration at the DCDC, his claims are evaluated under the Fourteenth Amendment's due process clause. Due process requires that a pre-trial detainee cannot be punished prior to an adjudication of guilt. *Bell v. Wolfish*, 441 U.S. 520, 537 (1979). To support a claim for relief, a plaintiff must allege and prove that the force purposely or knowingly used against him was objectively unreasonable, and objective reasonableness turns on the "facts and circumstances of each particular case." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015). Factors relevant to assessing the objective reasonableness of force used include:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

---

Cir. 2015). Courts may exercise "their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

*Id.* "Constitutionally infirm practices are those that are punitive in intent, those that are not rationally related to a legitimate purpose, or those that are rationally related but are excessive in light of their purpose." *Johnson-El v. Schoemehl*, 878 F.2d 1043, 1048 (8th Cir. 1989).

The Court has carefully reviewed the record, including the video recordings submitted as evidence, and finds that the defendants' use of force on McCoy on January 16, 2022, was objectively reasonable. Sholar, Walton, and Key spent almost 15 minutes trying to get McCoy to enter his assigned pod, but he refused to do so, continually arguing and protesting. Sholar tased him only after numerous warnings. And after he was tased, he still refused to submit to Walton's efforts to handcuff him, instead becoming irate and physical and advancing toward an officer. Key and Walton then deployed pepper spray at McCoy. The need for this limited use of force was clear – McCoy was actively resisting, appeared extremely violent, and posed a serious security problem. This limited use of force was also ineffective – McCoy became even more out of control after he was sprayed, accosting one officer and knocking over two others as he escaped through a hallway into the front intake area before he was finally subdued. Because the force used by Sholar, Walton, and Key was objectively reasonable under these circumstances, there was no constitutional violation, and these defendants are therefore entitled to qualified immunity.

2. <u>Medical Treatment Claim: Defendant Johnson</u>

McCoy does not allege that defendant Johnson, the jail administrator, used force against him on January 16. Rather, he alleges that Johnson left him in his cell for 33 hours after he was maced with no medical attention. Pretrial detainees' claims are evaluated under the Fourteenth Amendment's Due Process Clause rather than the Eighth Amendment. *See Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004). Pretrial detainees are entitled to at least as much protection under the Fourteenth Amendment as under the Eighth Amendment. *See id.* (citing *Spencer v. Knapheide Truck Equip. Co.,* 183 F.3d 902, 906 (8th Cir. 1999)); *see also Davis v. Hall,* 992 F.2d 151, 152–53 (8th Cir. 1993) (per curiam) (applying deliberate indifference standard to pretrial detainee's claims of inadequate medical care).[6] To succeed with an Eighth Amendment inadequate medical care claim, a plaintiff must allege and prove that: (1) he had objectively serious medical needs; and (2) prison officials subjectively knew of, but deliberately disregarded, those serious medical needs. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). Additionally, the

---

[6] In *Spencer,* the Eighth Circuit explained that it had never articulated an exact standard for evaluating medical treatment claims brought by pretrial detainees. 183 F.3d at 905. The Court acknowledged that pretrial detainees' claims may be subject to an objective reasonable test rather than the subjective deliberate indifference standard. *Id.* The Eighth Circuit addressed this issue again in *Bailey v. Feltmann*, 810 F.3d 589, 593 (8th Cir. 2016), where it declined to address the proper constitutional standard unnecessarily, but noted that when that case was decided it was not clearly established that a pre-trial detainee was entitled to more protection than that provided by the Eighth Amendment.

Eighth Circuit Court of Appeals has held that a "prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Estate of Rosenberg by Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995).

The undersigned finds that McCoy has failed to establish he had objectively serious medical needs that were deliberately disregarded by Johnson. McCoy received medical attention after he was placed in a restraint chair. The mace was washed off his face, he was examined by paramedics, and his blood pressure was taken. McCoy testified in his deposition that he was seen by an ADC nurse after he was transferred, and she did not find any treatment to be warranted. McCoy has not produced any medical records or expert opinion testimony to establish that he had serious medical needs warranting additional and immediate medical treatment,[7] and there is no evidence before the Court that he suffered any long term or permanent physical injury. Without such testimony, a jury would have to resort to speculation and conjecture to determine whether McCoy had serious medical needs that Johnson deliberately disregarded. For these reasons, McCoy fails to create a genuine dispute

---

[7] There is no indication that McCoy had a need for emergency medical treatment that would be obvious to a layperson. *See Williams v. Whitfield*, No. 2:09CV00100 JLH/BD, 2010 WL 4792146, at *2 (E.D. Ark. Nov. 17, 2010) (quoting *Roberson v. Bradshaw,* 198 F.3d 645, 648 (8th Cir.1999) ("'[W]e have repeatedly emphasized that the need or the deprivation alleged must be *either obvious to the lay person* or supported by medical evidence, like a physician's diagnosis.'") (emphasis in original).

of material fact related to his medical treatment claim. Accordingly, Johnson is entitled to summary judgment on McCoy's individual capacity claims.

### B. *Official Capacity Claims*

McCoy's official capacity claims also necessarily fail because he has not established that the defendants are individually liable for an underlying substantive claim. *See Alexander v. Dallas Cty. Det. Ctr.,* No. 21-1397, 2021 WL 5121257, at *1 (8th Cir. Nov. 4, 2021); *Brockinton v. City of Sherwood, Ark.*, 503 F.3d 667, 674 (8th Cir. 2007) (holding that the County cannot be held liable under § 1983 if the individual defendants are not liable). Moreover, McCoy describes an isolated incident, and does not assert that a custom or policy of Dallas County was the moving force behind the claimed violations of his constitutional rights.[8]

### V. Conclusion

For the reasons stated herein, the defendants' motion for summary judgment should be GRANTED, and McCoy's claims dismissed with prejudice.

---

[8] Official capacity claims are "functionally equivalent to a suit against the employing governmental entity." *Veach v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). Thus, a suit against a defendant in his official capacity is in essence a suit against the County or city itself. *See Murray v. Lene*, 595 F.3d 868 (8th Cir. 2010); *Liebe v. Norton*, 157 F.3d 574 (8th Cir. 1998). A municipality cannot be held liable on the basis of *respondeat superior*, or simply by virtue of being the employer of a tortfeasor. *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201 (8th Cir. 2013). Accordingly, the Defendants, as county employees, can only be held liable in their official capacities in this case if McCoy can establish that a constitutional violation was committed pursuant to "an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009).

SO RECOMMENDED this 7th day of December, 2023.

_____
UNITED STATES MAGISTRATE JUDGE